```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  10/23/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

   -against-

THIERRY ANTOINE

               Defendant.

No. 23-CR-305-2 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

     Defendant Thierry Antoine ("Defendant" or "Antoine") is charged by indictment on June 26, 2023 alleging that Defendant (1) conspired to commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951 (Count One); (2) perpetrated a Hobbs Act Robbery in violation of 18 U.S.C. §§ 1951 and 2 (Count Two); and (3) knowingly used and carried, and in furtherance of such crime, possessed a firearm, in violation of 18 U.S.C. §§ 924(c)(1)(A(i) and (ii) and 2 (Count Three). (Indictment, ECF No. 20). Trial is scheduled to begin November 6, 2024.  (Minute Entry for Proceedings held before Judge Nelson Stephen Román, September July 9, 2024).  Before the Court is the Government's motion *in limine* (the "Mot.", ECF No. 45).

     The Government has moved *in limine* to: (1) admit out-of-court communications between Antoine and Antoine's co-conspirators, (2) admit business records maintained in the regular course of business by certain third parties such as phone records from AT&T, Verizon, T-Mobile, the hotel where the co-conspirators rented a suite after the robbery, and license plate reader ("LPR") data from the Clarkstown Police Department; (3) preclude cross-examination of law enforcement witnesses regarding irrelevant and prejudicial topics; and (4) preclude cross-examination of Cooperating Witness-1, Cooperating Witness-2 and Victim-2 on criminal history not relevant to their credibility.

1

## BACKGROUND

The Indictment, dated June 26, 2023, alleges that on or about December 16, 2019, Thierry Antoine, along with Carlens Paul, allegedly conspired to and did indeed commit Hobbs Act Robbery. (Indictment ¶¶ 1, 2.) Additionally, the Indictment alleges that in carrying out the Hobbs Act Robbery, the Defendant knowingly used and carried a firearm in furtherance of said crime. (*Id.* ¶ 3.)

On July 9, 2024, the Court set the motions *in limine* briefing schedule, with moving papers to be filed on September 6, 2024, the response papers to be filed September 13, 2024 and the reply papers to be filed on September 20, 2024. (Minute Entry for Proceedings held before Judge Nelson Stephen Román, July 9, 2024). The Government filed its motion *in limine* on September 6, 2024 ("Motion" or "Mot.") (ECF No. 45). Defendant filed a response to the Government's motion on September 20, 2024 ("Response" or "Resp.") (ECF No. 50). The Government filed a reply in support of its motion on September 27, 2024 ("Reply") (ECF No. 51).

## LEGAL STANDARDS

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citation omitted). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial."

*United States v. Perez*, No. 09 CR 1153 MEA, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

With certain exceptions, all relevant evidence is admissible, and evidence which is not relevant is not admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Though the "standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985), the Court has "broad discretion to balance probative value against possible prejudice" under Rule 403, *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

## DISCUSSION

### I. Statements by Antoine and His Co-Conspirators

#### a. Applicable Legal Standard

Pursuant to Rule 801(d)(2)(A), a statement is not hearsay where the "statement is offered against an opposing party and … was made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A). Rule 801(d)(2)(E) allows for statements made by co-conspirators to be admissible as non-hearsay: the rule provides in relevant part that "[a] statement is not hearsay if ... the statement is offered against an opposing party and was made by the party's co-conspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E).

3

### b. Statements made by Antoine and by Co-Conspirators

The Government requests the Court admit certain communications, recordings and trial testimony from cooperating witnesses who were members of the conspiracy such as statements by Antoine and statements by Antoine's co-conspirators who were involved in the December 16, 2019 robbery. (Mot. p. 12.) The Government contends these are admissible under 801(d)(2)(A) and 801(d)(2)(E).

Specifically, the Government seeks to include text messages between Antoine and co-conspirator Jimmy Abellard, videos recorded by Abellard following the robbery that refer to the victim and the proceeds of the robbery, text messages between Abellard and co-conspirator Carlens Paul the day after the robbery wherein they exchanged texts regarding a third-party's attempt to take the robbery's proceeds from them. Finally, the Government seeks to include text messages between Abellard and a friend of the co-conspirators, whose house the co-conspirators traveled to following the robbery.

Statements made by Antoine are of the kind plainly anticipated by Rule 801(d)(2)(A). *See United States v. Lin,* 505 F. App'x 10 (2d Cir. 2012) (finding district court was within its discretion to admit statements made by defendant on phone calls as admissions made by a party opponent); *see also United States v. Pedroza,* 750 F.2d 187, 202 (2d Cir. 1984). Thus, the Court finds that the Government may include at trial statements made by Antoine as described in the Government's motion.

Regarding co-conspirator statements, the Government's motion seeks "a preliminary ruling that statements of Paul, Abellard, and other co-conspirators admissible against Antoine, subject to the introduction of trial evidence (including the statements themselves) sufficient to

Case 7:23-cr-00305-NSR    Document 62    Filed 10/23/24    Page 5 of 15

show the existence of a conspiracy." (Mot. at 7.) It is true that statements of co-conspirators are admissible under Rule 801(d)(2)(E). In order "[t]o admit a statement pursuant to this rule, a district court must find two facts by a preponderance of the evidence: first, that a conspiracy included the defendant and the declarant existed; and second, that the statement was made during the course and in furtherance of the conspiracy." *Bourjaily v. United States,* 483 U.S. 171, 175 (1987); *see also United States v. Gigante,* 166 F.3d 75, 82 (2d Cir. 1999). The Government's motion does not enumerate the statements with specificity which it seeks to introduce at trial, instead identifying categories of co-conspirator statements. (Mot. at 6-7.) In the Government's reply, the Government does identify specifically two chats it seeks to introduce at trial: 1) "[t]he Abellard – Paul Chat" and 2) "[t]he Abellard-Individual-1 Chat." (Reply at 6-9.) However, the Government has not yet submitted the necessary evidence establishing a conspiracy involving the Defendant existed as needed for the first prong of the Rule 801(d)(2)(E) analysis. *Bourjaily*, 483 U.S. 171, 175.

In order for the Court to be able to conduct the requisite analysis to determine the admissibility of the various co-conspirator statements alluded to in the Government's motion, the Court directs the Government to produce the co-conspirator statements it intends to rely on, along with the evidence tending to establish that a conspiracy involving the Defendant existed, to the Court a week in advance of trial. Accordingly, the Court will reserve judgment as to the Government's motion to admit co-conspirator statements.

## II. Business Records

### a. Applicable Legal Standard

Federal Rule of Evidence 803(6) provides an exception to the hearsay rule for:

A memorandum, report, record, or data compilation, in any form, of acts [or] events, ... made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data

5

compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6). Rule 803(6) "favor[s] the admission of evidence rather than its exclusion if it has any probative value at all," *In re Ollag Constr. Equip. Corp.,* 665 F.2d 43, 46 (2d Cir. 1981) (quotation omitted), and the "principal precondition" to admissibility "is that the record[ ] [has] sufficient indicia of trustworthiness to be considered reliable." *Saks Int'l v. M/V "EXPORT CHAMPION",* 817 F.2d 1011, 1013 (2d Cir. 1987). Further, the proffered record must be supported by a proper foundation, namely, that the document was "'kept in the course of a regularly conducted business activity' and also that it was the 'regular practice of that business activity to make the [record].'" *United States v. Freidin,* 849 F.2d 716, 719–20 (2d Cir. 1988) (quoting Rule 803(6)). This foundation must be established by the "'testimony of the custodian or other qualified witness' of the record." *Id.* at 720 (quoting Rule 803(6)).

"Rule 902(11) extends Rule 803(6) 'by allowing a written foundation in lieu of an oral one.'" *United States v. Rom*, 528 F. App'x 24, 27 (2d Cir. 2013) (quoting 5 Weinstein's Federal Evidence § 902.13[1] (2d ed. 2008)). If a party seeks to certify a business record pursuant to Rule 902(11) rather than by providing live testimony pursuant to Rule 803(6)(D), it "must give an adverse party reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them." Fed. R. Evid. 902(11). This notice requirement "is intended to give the opponent of the evidence a full opportunity to test the adequacy of the foundation set forth in the declaration." Fed. R. Evid. 902(11) advisory committee's note.

Here, the Government seeks to introduce records from third parties, specifically phone records from AT&T, Verizon, and T-Mobile (Sprint), hotel records and license plate reader

("LPR") data from the Clarkstown Police Department. (Mot. at 8.) The Defendant does not oppose the admission of business records "[p]rovided that the written certifications of record custodians otherwise meet the criteria for admissibility." (Resp. at 1.) Accordingly, the Court grants the Government's motion to introduce business records from third parties, provided the Government offers the requisite certification and the records themselves in accordance with the Federal Rules of Evidence.

### III. Cross-Examination of Law Enforcement Witnesses Regarding Irrelevant and Prejudicial Topics

#### a. Applicable Legal Standard

District courts have "broad discretion in controlling the scope and extent of cross examination." *United States v. James*, 712 F.3d 79, 103 (2d Cir. 2013). A district court is empowered to impose "reasonable limits" on cross-examination to safeguard against "'harassment, prejudice, confusion and waste.'" *United States v. White*, 692 F.3d 235 (2d Cir. 2012), as amended (Sept. 28, 2012) (quoting *United States v. Cedeño,* 644 F.3d 79, 82, (2d Cir. 2011)). Simultaneously, a district court must give wide latitude to a defendant in a criminal case to cross-examine government witnesses. *Id*. Cross examination of a witness regarding civil lawsuits wherein the witness is a defendant is often precluded because the lawsuits are only allegations and therefore do not have probative value. *See United States v. Clanton*, No. 23-CR-00328 (KAM)(PK), 2024 WL 3443422, *6 (E.D.N.Y. July 17, 2024).

Here, the Government seeks to preclude the Defendant from cross-examining the Government's law enforcement witnesses regarding civil lawsuits wherein the witnesses were named or unnamed defendants. (Mot. at 11.) The Government argues that the Court should preclude cross-examination regarding these civil lawsuits because they are not germane to the facts of the trial, do not bear on the witnesses' character for truthfulness, do not evidence bias or a

motive to lie, and their prejudicial impact outweighs any probative value. (*Id*.) The Defendant appears to concede that they do not intend to cross-examine law enforcement witnesses on "unrelated civil matters, unless it should come to light that those civil matters resulted in findings of misconduct." (Resp. at 4.)

      The Government seeks to preclude cross-examination of Officer Mark Colon of the Rockland County Sheriff's Office regarding a *habeas corpus* petition filed against the Superintendent of Downstate Correctional Facility in November 2021, and a civil lawsuit arising from the same set of operative facts. The *habeas* petition was dismissed as moot, and the civil lawsuit only briefly mentions Officer Colon across two paragraphs in the Third Amended Complaint. *Aurecchione v. McGuinness*, Sup. Ct., Dutchess Cnty., Nov. 12, 2021, Rosa, J., Index No. 53603/21 and *Aurecchione v. Falco*, No. 22 Civ. 4538 (NSR) (S.D.N.Y.). The Government also seeks to preclude cross-examination of Officer Shlomo Koenig regarding a *pro se* civil lawsuit against Detective Koenig and twelve other defendants, specifically alleging that Detective Koenig was a member of a secret religious police force that conspired against the plaintiff. The operative complaint was dismissed for failure to state a claim. No. 20 Civ. 9319 (PMH), Dkt. 7 (S.D.N.Y. Feb. 2, 2021). No amended complaint was ever filed, and the plaintiff filed a motion for reconsideration, which was denied October 21, 2022. *See* No. 20 Civ. 9319 (PMH), Dkt. 12 (S.D.N.Y. Oct. 21, 2022).

      The civil lawsuits involving Officer Colon and Officer Koenig at this point only constitute unproven allegations. Civil lawsuits that "contain mere allegations . . . have little to no probative value." *United States v. Robinson*, No. 20-CR-415 (KMW), 2021 WL 3003939, *2 (S.D.N.Y. July 12, 2021). It would be inconsistent with the Federal Rules of Evidence 403 to allow cross-examination on these civil lawsuits, and the Court therefore grants the Government's motion to

preclude cross-examination regarding the mentioned civil lawsuits as to both Officer Colon and Officer Koenig.

## IV. Cross-Examination of Cooperating Witness-1, Cooperating Witness-2 and Victim-2 on Criminal Convictions

### a. Applicable Legal Standard

Rule 609 controls the admissibility of criminal convictions for impeachment purposes. Rule 609(a) allows for admissibility of evidence under two circumstances: 609(a)(1) permits impeachment with convictions in excess of one year subject to the balancing test of Rule 403; 609(a)(2) holds that convictions of a crime involving "dishonesty or false statement" must be admitted regardless of the severity of the punishment and any resulting prejudice. *Daniels v. Loizzo*, 986 F. Supp. 245, 249 (S.D.N.Y. 1997). Rule 609(b) imposes a barrier that criminal convictions more than ten years old are not admissible for impeachment "unless the court determines that, in the interest of justice, the probative value of the conviction substantially outweighs its prejudicial effect." *Id*. For criminal conduct not resulting in a conviction, Rule 608(b) provides that on cross-examination specific instances of a witness's conduct may "be inquired into if they are probative of the character for truthfulness or untruthfulness of (1) the witness." Fed. R. Evid. 608(b).

### b. Cooperating Witness-1

The Government seeks to preclude cross-examination on a litany of arrests, convictions and uncharged, unlawful conduct associated with Cooperating Witness-1. The Government's motion lists 38 Items; Items 1-22 consist of arrests and convictions, and Items 23-38 consist of uncharged, unlawful conduct. (Mot. at 17-20.)

#### i. Items 1, 8, 19-22 (Convictions)
Items 1, 8 and 19-22 consist of Cooperating Witness-1's prior convictions. The Court

considers them in turn.

Items 1 and 8 are both convictions older than 10 years old; Item 1 is a conviction for assault in the third degree from October 21, 2007, and Item 8 is a conviction for grand larceny in the fourth degree from June 8, 2010. As discussed, Rule 609(b) filters out criminal convictions older than ten years unless the court finds that its probative value substantially outweighs its prejudicial effect. *United States v. Schlussel*, 2009 WL 536066, *1 (S.D.N.Y. Feb. 27, 2009) (denying defendant ability to cross-examine on convictions greater than ten years, noting that Congress intended, through Rule 609(b), that convictions over ten years old be admitted rarely and exceptionally). Items 1 and 8's probative value is not substantially outweighed by its danger of prejudicial effect; it is not apparent what probative value these convictions would have on the current case and they "have very little bearing on [Cooperating Witness-1's] character for truthfulness." *Id*. Accordingly, the Court grants the Government's motion to preclude cross-examination on Items 1 and 8.

Items 20 and 22 are both misdemeanor convictions within the past ten years; Item 20 is a conviction for assault in the third degree from June 2, 2016 and menacing in the second degree and Item 22 is also a conviction for assault in the third degree from June 5, 2019. "Under the first prong of 609(a)(1), these misdemeanor convictions are not admissible for purposes of impeachment." *Hartman v. Snelders*, 2010 WL 11626508, *11 (E.D.N.Y. Jan. 28, 2010). They are also "inadmissible under the second prong of Rule 609(a)(2) because it cannot be 'readily determined . . . the elements of the crime[s] required proof or admission of an act of dishonesty or false statement by the witness." *Id*. (quoting Fed. R. Evid. 609(a)(2)). Therefore, the Court grants the Government's motion to preclude cross-examination on Items 20 and 22.

Item 21 is a felony conviction of attempted assault in the second degree from September 6, 2016. Per Rule 609(a)(1), the Court must consider whether the conviction should be admitted

subject to the Rule 403 balancing analysis. Crimes of violence are often unduly prejudicial. *United States v. Walker*, 974 F.3d 193, 207 (2d Cir. 2020). Moreover, "violent crimes, however abhorrent, often are not crimes of dishonesty, and may not meaningfully reflect on a witness's truthfulness." *Id*. Here, there is no apparent probative value in allowing the Defendant to cross-examine Cooperating Witness-1 on account of Item 21, as it has marginal relevance to the current case and does not bear on Cooperating Witness-1's veracity. Therefore, the Court finds that Item 21's probative value is substantially outweighed by its prejudicial impact and thus the Court grants the Government's motion to preclude cross-examination on Item 21.

Item 19 is a felony conviction of criminal possession of stolen property in the fourth degree from September 6, 2016. Item 19 resulted from a series of thefts targeting a Jewish community wherein Cooperating Witness-1 broke into and stole contents from vehicles in a Jewish neighborhood. (Mot. at 25.) Cooperating Witness-1 specifically committed the thefts during the Sabbath, believing that "Jews do not use their vehicles from Friday night until Sunday." (*Id*.) Once again, the Court must consider the Rule 403 balancing test to determine whether to allow cross-examination on account of Item 19. "[C]ourts in the Second Circuit have held crimes involving theft, robbery, and burglary particularly probative of veracity because they rest on dishonest conduct." *United States v. Thomas*, 214 F. Supp. 3d 187, 196 (E.D.N.Y. 2016). Such convictions have "high" "impeachment value." *Id*. At the same time, the Court must balance the highly prejudicial impact such a conviction would have on Cooperating Witness-1. Therefore, the Court grants the Government's motion to preclude cross-examination in part; the Defendant is allowed to question Cooperating Witness-1 as to whether he was convicted of the crime detailed in Item 19, but the Defendant is precluded from specifically inquiring as to the underlying incidents of the crime.

### ii. Items 2-7, 9-18 (Arrests)

Items 9-18 consists of prior arrests involving Cooperating Witness-1. The arrests can be grouped into three categories: "(i) resulted in a ticket or a violation (Items 12, 13 and 17); (ii) resulted in a dismissal or acquittal (Items 9, 10, 11, 15 and 18); or (iii) have no result in law enforcement records or of which the Government is otherwise aware (Items 2-7, 14, and 16)." (Mot. at 26.) Notably, for each of these arrests there was no resulting convictions, rendering Rule 609 inapplicable.

For Rule 608(b), the Court finds that the arrests are not probative of Cooperating Witness-1's character for truthfulness. Courts have routinely held that arrests and/or unproven charges do not impugn a witness' credibility; "[a]rrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness." *Michelson v. United States*, 335 U.S. 469, 482 (1948); *see also Nibbs v. Goulart*, 822 F. Supp. 2d 339, 344 (S.D.N.Y. 2011) (noting that "arrest history holds no value as impeachment material"); *Daniels,* 986 F. Supp. at 252 (holding that plaintiff's arrests that did not result in convictions were inadmissible under Rule 608(b)). Therefore, the Court grants the Government's motion to preclude cross-examination on Items 2-7, 9-18.

### iii. Items 23-38 (Uncharged, Unlawful Conduct)

The conduct described across Items 23-38 consist of instances relating to "(i) theft and robbery, (ii) violence, and (iii) weapons or narcotics possession." (Mot. at 28.) Items 23-29 and 32-38 do not go to Cooperating Witness-1's credibility or character for truthfulness, as required to be admissible under Rule 608(b). The "loathsomeness of prior misconduct does not necessarily bear on the perpetrator's capacity for truth-telling. Cross-examination concerning immoral acts . . . may be properly excluded by a trial judge who determines they are not probative of the witness's veracity." *United States v. Devery*, 935 F. Supp. 393, 408 (S.D.N.Y. 1996), *aff'd sub nom. United*

*States v. Torres*, 128 F.3d 38 (2d Cir. 1997). Therefore, the Court grants the Government's motion to preclude cross-examination on Items 23-29, 32-38.

The Government's motion to preclude cross-examination on Items 30 and 31 requires further analysis. Item 30 reads: "[t]heft of approximately two handfuls of crack cocaine from a drug dealer sharing a residence with CW-1 in Rockland County that occurred in or about 2008 or 2009" and Item 31 reads: "[t]heft of a safe containing approximately $30,000 from a drug dealer sharing a residence with CW-1 in Rockland County that occurred in or about 2008 or 2009." On one hand, "theft crimes, and other crimes involving stealth ... bear on a witness's propensity to testify truthfully." *United States v. Estrada,* 430 F.3d 606, 621 (2d Cir.2005); *see Williams v. McCarthy,* 05 Civ. 10230, 2007 WL 3125314, at *2 (S.D.N.Y. Oct. 25, 2007); *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.,* 01 Civ. 3796, 2005 WL 1026515, at *8–9 (S.D.N.Y. May 2, 2005). On the other hand, that this conduct occurred approximately fifteen to sixteen years ago leads the Court to conclude that the conduct "is too remote in time to be probative in this case." *United States v. Calderon-Urbina*, 756 F. Supp. 2d 566, 568 (S.D.N.Y. 2010) (denying cross-examination of petit larceny arrest from twenty-one years prior as too remote for the purposes of Rule 608(b) analysis). Therefore, the Court grants the Government's motion to preclude cross-examination on Items 30 and 31.

    c. **Cooperating Witness-2**

The Government seeks to preclude cross-examination of Cooperating Witness-2's prior misdemeanor conviction, as well as his June 2014 and June 2020 arrests. Regarding the prior conviction, Cooperating Witness-2 pled guilty in June of 2017 to criminal facilitation in the fourth degree, a misdemeanor. New York Penal Law § 115.00(01). Because this is a misdemeanor crime not involving dishonesty or false statement, the Court will not allow the Defendant to cross-

13

examine Cooperating Witness-2 on these grounds. *United States v. Vickers*, No. 13-CR-128, 2015 WL 751228 (W.D.N.Y. Feb. 23, 2015) (finding misdemeanor conviction inadmissible where crime did not involve dishonesty or false statement).

In June 2014, Cooperating Witness-2 was arrested for unlawful possession of marijuana, ultimately resulting in a ticket. Per 609(b), this crime is more than ten years old and has no probative value whatsoever regarding Cooperating Witness-2's credibility. Therefore, the Government's motion to preclude cross-examination on Cooperating Witness-2's June 2014 arrest is granted. The Government's motion mentions but does not substantively address Cooperating Witness-2's January 2020 arrest. Accordingly, the Court reserves judgment as to whether to allow the Defendant to cross-examine Cooperating Witness-2 on this arrest.

### d. Victim-2

The Government seeks to preclude cross-examination regarding Victim-2's May 2022 conviction for driving while their ability was impaired by alcohol. For the purposes of the Rule 609 analysis, this was not a crime involving dishonesty or false statement, and the conviction was a vehicle and traffic law infraction. Moreover, this conviction is of little, if any, probative value, and an offense involving alcohol likely has prejudicial effect. Therefore, the Government's motion to exclude cross-examination of Victim-2 on their May 2022 conviction is granted.

## CONCLUSION

For the foregoing reasons, the Government's motion *in limine* is GRANTED in part. In summary, the Court: (1) permits the Government to introduce statements made by Defendant Thierry Antoine as party-opponent statements; (2) reserves judgment as to whether the Government may introduce co-conspirator statements; (3) permits the Government to introduce business records from third parties; (4) precludes the Defendant Thierry Antoine from cross-examining Officer Shlomo Koenig and Officer Mark Colon regarding the aforementioned civil

lawsuits; (5) precludes the Defendant Thierry Antoine from cross-examining Cooperating Witness-1, Cooperating Witness-2 and Victim 2 as to the aforementioned criminal history subject to the following: the Defendant may cross-examine Cooperating Witness-1 as to his September 6, 2016 felony conviction but only as to whether Cooperating Witness-1 was convicted of the crime – the Defendant may not inquire as to the specific underlying incidents, and as to Cooperating Witness-2's January 2020 arrest, the Court reserves judgment. Finally, the Court directs the Government to produce the co-conspirator statements it intends to rely on, along with the evidence tending to establish that a conspiracy involving the Defendant existed, to the Court a week in advance of trial.

    The Clerk of Court is respectfully directed to terminate the motion at ECF No. 45.

Dated:   October 23, 2024  
           White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge